USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/19/2024

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KENMAR SECURITIES, LLC

                    Plaintiff,

        - against -

NEGOCIOS Y TELEFONIA NEDETEL

                    Defendant,

**24 Civ. 6737 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

On August 1, 2024, petitioner Kenmar Securities, LLC ("Kenmar" or "Petitioner") obtained a final arbitration award (the "Final Award") against respondent Negocios y Telefonía Nedetel S.A. ("Nedetel" or "Respondent"). (Dkt. No. 6-1.) Petitioner subsequently filed this Motion to Confirm and Enforce the Final Arbitration Award. (Dkt. No. 5.) Respondent does not contest the Final Award except on the narrow issue of post-judgment interest. (Dkt. No. 17.) For the reasons discussed below, Petitioner's Motion is GRANTED IN PART and DENIED IN PART, with modifications made to the Final Award's calculation of post-judgment interest and denial of Petitioner's request for fees and costs incurred in this federal action.

## I.    BACKGROUND

The underlying arbitration arose from Nedetel's alleged breach of the parties' advisory agreement (the "Agreement"),

which was signed in September 2020. (Dkt. No. 6-1 [hereinafter "Final Award"] ¶ 4.) Kenmar is a registered broker dealer in the United States. (Dkt. No. 6-1, Ex. A [herein "Partial Final Award"] ¶ 3.) Nedetel is an Ecuadorian telecommunications company, which was wholly owned by brothers Juan Carlos Menendez Romero and Gaston Antonio Menendez Romero (the "Menendez Brothers") at the time the Agreement was signed. (Id. ¶¶ 2, 6.) Under the Agreement, Kenmar agreed to provide advisory and investment banking services to Nedetel in connection with a potential acquisition of Nedetel. (Id. ¶ 2.) In exchange for Kenmar's advisory services, Nedetel would pay a monthly retainer as well as a "success fee" upon the closing of any transaction for the sale of Nedetel. (Id. ¶ 60.) The Agreement defined "transaction" as a sale made directly or indirectly by Nedetel through a negotiated purchase or other means, such as equity securities or interests. (Id. ¶¶ 57-59.) Upon termination of the Agreement, Kenmar was entitled to success fees if Nedetel entered or closed a transaction within 24 months of the termination (the "Tail Period"). (Id. ¶¶ 43, 61.)

Enforcement of the Agreement's terms was to be governed by New York state law. (Id. ¶ 9.) The Agreement also included an arbitration clause in accordance with the Commercial Rules

of the American Arbitration Association ("AAA") to resolve
any disputes between the parties. (Id.)

In July 2021, Nedetel terminated the Agreement and
subsequently entered into two transactions through the
Menendez Brothers: (1) a stock purchase agreement ("SPA") to
transfer 70 percent of the equity of Nedetel to a third-
party, Ufinet Latam, S.L.U. ("Ufinet Latam"), and (2) a
shareholders' agreement ("Put/Call Option") providing
put/call options for the purchase and sale of the Menendez
Brothers' remaining 30 percent equity in Nedetel. (Id. ¶ 2;
see also Dkt. No. 7 at 2.) In October 2021, the SPA
transaction closed, and the Put/Call Option was entered upon
closing of the SPA. (Partial Final Award ¶ 59.) Under the
Put/Call Option, the Menendez Brothers eventually sold a
percentage of their remaining shares in December 2023. (Id.)

In November 2022, Kenmar initiated arbitration
proceedings against Nedetel[1] before the International Centre
for Dispute Resolution ("ICDR"), a division of the AAA. (Id.
¶¶ 10, 12.) In the arbitration proceedings, Kenmar alleged

---

[1] Kenmar's original arbitration petition brought claims against Nedetel,
the Menendez Brothers, and Ufinet Telecom, S.A.U. ("Ufinet Telecom"),
with Ufinet Latam added in an amended petition. (Partial Final Award ¶¶
12-14.) The arbitrator ruled that the arbitration would only proceed
against Nedetel and Ufinet Telecom due to the absence of party agreement
to arbitrate or a court order. (Id. ¶ 14.) By July 2023, Kenmar had
withdrawn all claims against Ufinet Telecom without prejudice and Nedetel
was the only remaining respondent. (Id. ¶¶ 19-20.)

that Nedetel breached its obligation under the Agreement to pay success fees in connection to the SPA and Put/Call Option transactions within the Tail Period. (Id. ¶ 2.) Kenmar brought three claims against Nedetel: (1) breach of contract for Nedetel's failure to pay success fees related to the SPA and Put/Call Option transactions, (2) declaratory judgment that Kenmar was entitled to additional success fees to the extent that the Put/Call Option was exercised in the future, and (3) unjust enrichment related to the SPA and Put/Call Option transactions. (Id. ¶ 31.)

In the Partial Final Award, issued on June 10, 2024, the arbitrator ruled in favor of Kenmar on the breach of contract claim and rendered the requested declaratory relief, but denied Kenmar's claim for unjust enrichment as moot. (Final Award ¶ 4; Partial Final Award ¶¶ 83, 89(h).) Kenmar was awarded $3,713,846 in damages, pre-award and post-award interest at the rate of 9 percent per annum, as well as declaratory relief requiring Nedetel to pay a success fee upon the exercise of the Put/Call Option in the future. (Partial Final Award ¶¶ 89(a)-(g).) The Partial Final Award reserved ruling on the issue of fees and costs for the Final Award. (Id. ¶ 89(j).)

The Final Award, issued on August 1, 2024, fully incorporated the Partial Final Award and resolved the issue

of fees and cost. Kenmar was awarded attorneys' fees, costs, and expenses in the amount of $535,539.25. Nedetel was ordered to pay the arbitration costs, which totaled $149,125.50. (Final Award ¶ 35.)

Kenmar now seeks to confirm and enforce the arbitration award and entry of judgment against Nedetel. (Dkt. Nos. 5-7.) Kenmar also seeks fees and costs incurred in this federal court action. (Dkt. No. 7 at 9.) Nedetel opposes enforcement only regarding the arbitration award on the narrow issue of post-judgment interest. (Dkt. No. 17.)

## II.  DISCUSSION

A.  STANDARD OF REVIEW

"The Federal Arbitration Act provides 'a streamlined process' for a party seeking to confirm, vacate, or modify an arbitration award." Glob. Gold Mining LLC v. Caldera Res., Inc., No. 18 CIV. 4419, 2019 WL 367824, at *4 (S.D.N.Y. Jan. 30, 2019) (citation omitted). In furtherance of this streamlined procedure, judicial review of an arbitral award is sharply circumscribed "so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71-72 (2d Cir. 2012) (citation omitted). Even where

a Court believes the arbitrator was incorrect, an award should be confirmed if the decision was within the scope of the arbitrator's authority. See, e.g., United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). Generally, confirmation of an arbitration award "merely makes what is already a final arbitration award a judgment of the court." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted).

The movant's burden "is not an onerous one" and requires only "a barely colorable justification for the arbitrator's conclusion." Neshgold LP v. N.Y. Hotel & Motel Trades Council, AFL-CIO, No. 13 CIV. 2399, 2013 WL 5298332, at *7 (S.D.N.Y. Sept. 19, 2013) (citations omitted). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." Maersk Line Ltd. v. Nat'l Air Cargo Grp., Inc., No. 16 CIV. 6272, 2017 WL 4444941, at *2 (S.D.N.Y. Oct. 4, 2017) (citations omitted); Whittaker v. MHR Fund Mgmt. LLC, No. 20 CIV. 7599, 2021 WL 9811715, at *11 (S.D.N.Y. Sept. 28, 2021) ("[C]ourts must grant an arbitration panel's decision great deference." (citation omitted)).

B.    <u>CONFIRMATION OF THE FINAL ARBITRATION AWARD</u>

The parties do not dispute the merits or damages awarded in the Final Award. In the absence of dispute on these points, the Court need only determine whether the arbitrator acted within the scope of her authority. <u>See</u> <u>Viamedia, Inc. v. WideOpenWest Fin., LLC</u>, No. 20 CIV. 4064, 2021 WL 3550236, at *1 (S.D.N.Y. Aug. 11, 2021). Having reviewed the petition, the memorandum of law, as well as the accompanying documents, the Court is persuaded that the arbitrator acted within the scope of her authority and confirms the Final Award. <u>Id.</u> Nor are there other grounds for setting aside the Final Award. <u>Gottdiener</u>, 462 F.3d at 110 (explaining that under the Federal Arbitration Act, "the court must grant the award unless the award is vacated, modified, or corrected" (citation omitted)).

C.    <u>FEES AND COSTS</u>

The Court confirms the award of reasonable fees and costs incurred in the arbitration proceedings. Although the Agreement did not explicitly provide for costs and fees, the Final Award explained that the parties agreed to grant the arbitrator authority to award fees and costs, including attorneys' fees. (Final Award ¶¶ 23-29.) Under these circumstances, the Court concurs that the award of reasonable fees and costs did not exceed the scope of the arbitrator's

authority. Clarendon Mktg., Inc. v. CT Chemicals (USA), Inc., No. 93 CIV. 0285, 1993 WL 300041, at *8 n.4 (S.D.N.Y. Aug. 4, 1993).

Regarding specific fees and costs, the Final Award required Nedetel to pay $30,237.50 in ICDR administrative fees, $118,888.00 for arbitrator compensation, as well as $86,388.28 in ICDR fees and arbitrator compensation that exceeded the apportioned costs previously incurred by Kenmar. (Final Award ¶ 35(c).) Kenmar was awarded $348,662.40 in reasonable attorneys' fees and $100,488.57 in reasonable attorneys' costs. (Id. ¶ 35(d).) The Final Award includes "colorable justification" for these awarded amounts and for reducing Kenmar's requested $871,656.00 for attorneys' fees and $292,181.52 in attorneys' costs by nearly 60 percent. (Id. ¶¶ 27-33.) Glob. Gold Mining LLC, 2019 WL 367824, at *6. "Where, as here, there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law, a court must confirm the award." N.Y.C. Dist. Council of Carpenters v. Gen-Cap Indus., Inc., No. 11 CIV. 8425, 2012 WL 2958265, at *3 (S.D.N.Y. July 20, 2012).

D.    PRE-AWARD AND POST-AWARD PRE-JUDGMENT INTEREST

The Court also confirms the Final Award's adoption of pre- and post-award pre-judgment interest, both at the New

8

York statutory rate of 9 percent per annum, on the damages awarded by the arbitrator.[2]

Under New York law, there are two distinct periods of pre-judgment interest: pre-award and post-award interest. ExxonMobil Oil Corp. v. TIG Ins. Co., 44 F.4th 163, 179 (2d Cir. 2022). Pre-award interest accrues "from the earliest ascertainable date the cause of action existed until the date the award is granted." Id. (citation omitted). Although not required by New York law, an arbitrator has discretion to impose pre-award interest. Moran v. Arcano, No. 89 CIV 6717, 1990 WL 113121, at *2 (S.D.N.Y. July 27, 1990) ("Arbitrators may in their discretion provide for pre-award interest, and when they do, it becomes a part of their award upon which judgment enters."). Once the award is entered, post-award interest accrues on the total sum awarded until the final judgment is entered. ExxonMobil Oil Corp., 44 F.4th 163 at 180. Unlike pre-award interest, post-award interest "is a statutory requirement that falls inherently outside an

---

[2] Kenmar contends that the arbitrator awarded 9 percent per annum interest on the attorneys' fees and costs award. (See Dkt. Nos. 7 at 9, 19-1 at 2.) Not so. The arbitrator imposed interest of 9 percent per annum only on the damages award. (Partial Final Award ¶¶ 89(c), (f); Final Award ¶ 35.) Under New York law, "absent express contractual or statutory provisions to the contrary, attorney's fees are not recoverable as damages." Lenard v. Design Studio, 889 F. Supp. 2d 518, 537 (S.D.N.Y. 2012). The Court is unaware of any relevant exceptions to this general rule and declines to impose interest on the fees and costs award.

arbitrator's authority and within the authority of the courts." Id.

Here, the arbitrator awarded pre-award interest on damages in connection with the SPA from October 21, 2021, the date the SPA closed, through June 10, 2024, the date of the Partial Final Award. (Partial Final Award ¶¶ 89(c)-(d).) For damages in connection with the Put/Call Option, the arbitrator awarded pre-award interest from December 13, 2023, the date of the Put/Call Option closed, through June 10, 2024, the date of the Partial Final Award. (Id. ¶¶ 89(c), 89(e).) The Court agrees that these accrual dates are reasonable. See Maersk Line Ltd., 2017 WL 4444941, at *3; see also Nasdaq, Inc. v. Exch. Traded Managers Grp., LLC, 431 F. Supp. 3d 176, 275 (S.D.N.Y. 2019) ("The Court has . . . wide discretion to determine a reasonable date from which to calculate interest where damages are incurred at various times after the cause of action accrues." (citation omitted)).

The arbitrator also included a provision that if Nedetel did not pay the SPA and Put/Call Option damages awards within 30-days of the Partial Final Award, any unpaid amount would accrue at an interest rate of 9 percent per annum. (Partial Final Award ¶ 89(f).) To comply with New York law, the Court construes this provision to mean that any unpaid damages accrued at 9 percent per annum as pre-award interest from

July 10, 2024, until entry of the Final Award on August 1, 2024. See Maersk Line Ltd., 2017 WL 4444941, at *3 (affirming arbitrator's decision to award pre-award interest at the rate of 9 percent per year under New York law).

"While pre-award interest is a matter left within an arbitrator's discretion, post-award pre-judgment interest is a matter left with the district court." Maersk Line Ltd., 2017 WL 4444941, at *3 (citation and alteration omitted). To comply with New York law, this Court holds that any unpaid damages from August 1, 2024, until the date this judgment is entered, accrued post-award interest at a rate of 9 percent per annum. (Partial Final Award ¶¶ 86, 89(f).) See Loans on Fine Art LLC v. Peck, No. 23 CIV. 04143, 2024 WL 4601955, at *6 (S.D.N.Y. Oct. 29, 2024) ("Post-award pre-judgment interest . . . is mandatory under New York law . . . at a rate of 9 percent per annum" upon entry of an arbitration award until "entry of final judgment" (citations omitted)).

E.   POST-JUDGMENT INTEREST

The parties dispute only the applicable post-judgment interest rate.[3] Petitioner argues that the applicable post-

---

[3] In its reply brief, Kenmar defends its request for a post-judgment rate of 9 percent per annum, but then "consents to an award of post-judgment interest at the rate provided for in 28 U.S.C. ¶ 1961(a)." (Dkt. No. 19 at 2.) Given the ambiguity and for the sake of completeness, the Court addresses the parties' arguments on the issue of post-judgment interest. See Johnson v. LaValley, No. 11 CIV. 3863, 2014 WL 285089, at *14 n.10 (S.D.N.Y. Jan. 24, 2014).

judgment interest rate is 9 percent per annum, consistent with the pre- and post-award interest rates set in the Final Award. (Dkt. No. 19 at 1.) Respondent argues that 28 U.S.C. § 1961 dictates the post-judgment interest rate absent party agreement, and that there is no such agreement here. (Dkt. No. 17 at 1.) For the reasons explained below, the Court must apply the Section 1961 post-judgment interest rate.

Section 1961 provides that the post-judgment interest on "any money judgment in a civil case recovered in a district court . . . shall be calculated" as outlined in that section.[4] See AXA Versicherung AG v. New Hampshire Ins. Co., 962 F. Supp. 2d 509, 512 (S.D.N.Y. 2013) (quoting 28 U.S.C. § 1961(a)). Essentially, any post-judgment interest on a civil money judgment must be calculated at the federal judgment rate. See id. Generally, the award of post-judgment interest pursuant to Section 1961 is "mandatory" and does not "permit . . . the exercise of judicial discretion." Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n, 852 F.3d 217, 223 (2d Cir. 2017) (citations omitted).

Section 1961 applies to actions to confirm an arbitration award, even if the award itself adopts a different

---

[4] The Section 1961 interest rate is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a).

post-judgment interest rate. See AXA Versicherung, 962 F.
Supp. 2d at 512; Carte Blanche (Singapore) Pte., Ltd. v. Carte
Blanche Int'l, Ltd., 888 F.2d 260, 269 (2d Cir. 1989)
("We . . . conclude that a district court judgment affirming
an arbitration award is governed by statutory post-judgment
interest rates.").

However, parties may set a different post-judgment
interest rate by contract through "clear, unambiguous and
unequivocal language." Westinghouse Credit Corp. v. D'Urso,
371 F.3d 96, 102 (2d Cir. 2004) (citation omitted); see also
id. ("Most fundamentally, such contracts must actually
indicate the parties' intent to deviate from [Section]
1961."). Even though Section 1961 "employs mandatory
language, . . . this is aimed mainly at precluding district
courts from exercising discretion over the rate of interest
or adopting an interest rate set by arbitrators, . . . not at
limiting the ability of private parties to set their own rates
through contract." Id. at 101 (citation omitted).

Here, Kenmar seeks a post-judgment interest rate of 9
percent per annum. (Dkt. No. 7 at 9.) Nedetel argues that the
Section 1961 post-judgment rate must apply because the
parties never agreed on a post-judgment interest rate. (Dkt.
No. 17 at 2-3.) In response, Kenmar contends that the parties'
agreement to submit the question of post-award interest to

the arbitrator included the question of post-judgment interest and thus this agreement is sufficient to deviate from Section 1961. (Dkt. No. 19 at 2.)

Kenmar's position is flawed for two reasons. First, Kenmar conflates post-award pre-judgment interest with post-judgment interest. New York law requires an award of post-award pre-judgment interest at the rate of 9 percent per annum. See Loans on Fine Art LLC, 2024 WL 4601955, at *6. However, post-judgment interest is set by Section 1961, absent clear party agreement to supplant the federal judgment rate. Westinghouse Credit Corp., 371 F.3d at 102. To contract around Section 1961, the parties must specify that the interest rate sought will accrue after the judgment is entered. Id. Here, the parties did not explicitly submit the issue of post-judgment interest to the arbitrator. Rather, the parties agreed that the arbitrator had discretion to set "pre-award and post-award" interest "from the date of the breach through the date of the award." (Partial Final Award ¶¶ 84-85.) Contrary to Kenmar's assertion, the parties' agreement to adjudicate the interest rate did not extend to post-judgment interest. See Westinghouse Credit Corp., 371 F.3d at 102.

Second, even assuming that the parties agreed to submit the question of post-judgment interest to the arbitrator, the

parties requested different interest rates: Kenmar sought 9 percent per annum and Nedetel sought 3.28 percent per annum. (Partial Final Award ¶¶ 84-86.) The parties' agreement to submit the interest rate issue to the arbitrator is insufficient to deviate from Section 1961. Instead, parties must expressly agree (1) on the interest rate and (2) that this rate applies specifically to post-judgment interest. See Westinghouse Credit Corp., 371 F.3d at 102. There is no such agreement between the parties here.

Thus, Kenmar is entitled to post-judgment interest at the statutory rate defined in Section 1961, which shall be calculated from the date this judgment is entered.

F.    FEES AND COSTS IN FEDERAL PROCEEDINGS

Kenmar also seeks an award of fees and costs incurred in these federal proceedings to confirm the arbitration award. (Dkt. No. 7 at 9.) However, Kenmar does not point to, nor can the Court identify, any relevant statutory authority or party agreement that permits an award of fees and costs in this action to confirm the arbitration award. See LaGuardia USA, LLC v. Unite Here Loc. 100, No. 20 CIV. 9163, 2021 WL 860376, at *3 (S.D.N.Y. Mar. 8, 2021).

In accordance with the American Rule, "the prevailing party in federal court litigation is not entitled to recover legal fees incurred in the conduct of that litigation." Bliven

v. Hunt, 579 F.3d 204, 212 (2d Cir. 2009) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)). Thus, absent express statutory authority or party agreement, a prevailing party cannot collect attorneys' fees incurred in a federal action. Id.; Katalyst Sec., LLC v. Marker Therapeutics, Inc., No. 21-CV-08005, 2023 WL 22610, at *3 (S.D.N.Y. Jan. 3, 2023).

The Court is unaware of any relevant statutory exceptions to the American Rule that would permit an award of fees and costs here. Adopting the American Rule, New York law has established that, absent party agreement or party misconduct, "the prevailing litigant ordinarily cannot collect . . . attorneys' fees from its unsuccessful opponents." Congel v. Malfitano, 101 N.E.3d 341, 351-52 (N.Y. 2018) (citation omitted). Moreover, the Federal Arbitration Act does not provide for an award of attorneys' fees, expenses, or costs. Ganfer & Shore, LLP v. Witham, No. 10 CIV. 4075, 2011 WL 321151, at *7 (S.D.N.Y. Jan. 6, 2011), report and recommendation adopted, No. 10 CIV. 4075, 2011 WL 308407 (S.D.N.Y. Jan. 28, 2011).

Here, the parties did not agree to award the prevailing party fees and costs stemming from proceedings to confirm the arbitration award. As previously discussed, the Agreement does not address an award of fees and costs in any

proceedings. See Witham, 2011 WL 321151, at *7 (denying petitioner's request for fees and costs because the agreement "d[id] not provide for attorney's fees, expenses, costs, or disbursements in connection with the confirmation of the arbitration award"); cf. Legacy Agency, Inc. v. Scoffield, No. 20-CV-5771, 2021 WL 5332295, at *4 (S.D.N.Y. Nov. 15, 2021) (awarding attorney's fees in proceeding to confirm arbitration award because the "Agreement explicitly entitle[d] [the prevailing party] to attorney's fees incurred in this action").

Nor did the parties agree separately from the Agreement on awarding fees and costs in this federal action. Although the arbitrator concluded that the parties agreed to award attorneys' fees and costs to the prevailing party in the arbitration, as evidenced through their submissions to the arbitrator, that party agreement was limited to the arbitration action. (Final Award ¶¶ 27-29.) Without clear indication that the parties agreed to award fees and costs in connection to confirming the arbitration award, Kenmar is not entitled to such an award. See Witham, 2011 WL 321151, at *7.

Kenmar's request for fees and costs incurred in this federal action to confirm the arbitration award is denied.

### III. <u>ORDER</u>

For the foregoing reasons, it is hereby

**ORDERED** that the motion to confirm and enforce the arbitration award by petitioner Kenmar Securities, LLC ("Kenmar") (Dkt. No. 5) is GRANTED IN PART and DENIED IN PART; it is further

**ORDERED** that judgment against respondent Negocios y Telefonia Nedetel S.A. ("Nedetel") is entered in the amounts of (1) $3,170,210 with pre-award interest at 9 percent per annum from October 21, 2021, through June 10, 2024, and from July 10, 2024, through August 1, 2024, as well as post-award interest at 9 percent per annum from August 1, 2024 until the date this judgment is entered; (2) $543,636 with interest at 9 percent per annum from December 13, 2023, until June 10, 2024, and from July 10, 2024, through August 1, 2024, as well as post-award interest from August 1, 2024, through the date this judgment is entered; (3) $535,539.25 in attorneys' fees and costs; and (4) $149,125.50 in arbitration fees and arbitrator compensation; it is further

**ORDERED** that Nedetel pay Kenmar a success fee according to the terms of Exhibit A of the Advisory Agreement (Dkt. No. 6-2) for any put/call option on shares that may be exercised pursuant to the put/call option agreement dated October 18, 2021, and that the success fee shall be due upon closing of

the transaction for the purchase and sale of the shares being
transferred; it is further

ORDERED that the Clerk of Court award Kenmar post-
judgment interest that will accrue at the statutory rate
pursuant to 28 U.S.C. § 1961 from the date of entry of this
judgment; and it is further

ORDERED that Kenmar's request for costs and fees
associated with this proceeding is DENIED.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:    19 December 2024
          New York, New York

Victor Marrero
U.S.D.J.